IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDWARD COLEMAN,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

CIVIL ACTION FILE NO.

1:21-cv-01095-CAP-CMS

**FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on the motion for summary judgment filed by Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian"). [Doc. 96]. The motion has been fully briefed and is before me for a Report and Recommendation.

Plaintiff's one-count complaint alleges that Experian violated Section 1681e(b) of the Fair Credit Reporting Act by failing to follow reasonable procedures to assure maximum possible accuracy of information in the preparation of Plaintiff's consumer reports pertaining to statutorily dischargeable debts that arose prior to Plaintiff's filing for bankruptcy; and, as a result, Experian inaccurately reported an account that Plaintiff had with First Franklin Financial ("First Franklin") as "open" with a balance

of $1,336 when it should have reported the status of the pre-petition debt with First Franklin as included in or discharged in Plaintiff's Chapter 7 bankruptcy with a $0 balance. Plaintiff alleges that he was injured as a result. [Doc. 1, Compl. ¶¶ 1, 43–48, 65, 69, 74, 78, 80]. He alleges both negligent violation of the law (a claim that requires actual damages) and willful violation of the law (a claim that does not require actual damages).

For the reasons discussed below, I will recommend that Experian's motion for summary judgment be granted. Plaintiff has failed to show the actual damages necessary for his negligence claim and has failed to show that Experian either knowingly or recklessly violated the law for his willfulness claim.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56; *Ezell v. Wynn*, 802 F.3d 1217, 1222 (11th Cir. 2015). The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the



AO 72A
(Rev.8/82)

nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fails to discharge this initial burden, the motion must be denied. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citation omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (citation omitted). Mere conclusions and factual allegations unsupported by evidence are insufficient to survive a motion for summary judgment. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).



AO 72A
(Rev.8/82)

It is not the Court's function to scour the record in search of evidence to defeat a motion for summary judgment. Instead, the Court relies on the non-moving party to identify the evidence which creates an issue of triable fact. *See* FED. R. CIV. P. 56(c)(1)-(3); *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990). Resolving all doubts in favor of the non-moving party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). All reasonable inferences will be made in the non-moving party's favor. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

## II. FACTS[1]

In light of the foregoing summary judgment standard, the Court finds the following facts for the purpose of resolving Experian's pending motion for summary judgment only.

1 For purposes of this Report and Recommendation, unless otherwise indicated, citations to the record are made to the CM/ECF heading at the top of the page cited; citations to deposition pages are to the CM/ECF docket entry, but the actual page number of the hardcopy deposition transcript.



AO 72A
(Rev.8/82)

On December 31, 2019, Plaintiff took out a cash loan in the amount of $1,596 with First Franklin so that he could pay for a dental procedure.[2] [Doc. 99, Def.'s Stmt. of Mat. Facts ("DSMF") ¶ 1; Doc. 109 (sealed) at 2, First Franklin Credit Reporting of Coleman Account].

On January 6, 2020, six days after incurring the debt to First Franklin, Plaintiff filed a petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Georgia and signed sworn statements that his schedule of liabilities and list of creditors were true and correct. [DSMF ¶¶ 3–4]. Plaintiff, however, failed to list the First Franklin debt on his bankruptcy petition or schedule of liabilities, and never sought to amend his bankruptcy petition or schedules to add First Franklin as a creditor to his bankruptcy. [*Id.* ¶¶ 5–6]. Because First Franklin was not listed on Plaintiff's petition as a creditor, the bankruptcy court did not provide First Franklin with notice of Plaintiff's bankruptcy. [*Id.* ¶ 7]. Plaintiff testified in his deposition that he was not

---

2 Plaintiff testified in his deposition, however, that as of September 2021, he still had not undergone the dental procedure because it cost more than he had anticipated. He used the money instead to pay other bills. [Doc. 96-2, Deposition of Edward Coleman ("Coleman Dep.") at 29]. Plaintiff testified that he listed "a few TVs" as collateral in order to secure the First Franklin loan. [*Id.*].



AO 72A
(Rev.8/82)

sure why First Franklin was not listed as a creditor, but the omission was not intentional.[3] [Doc. 96-2, Coleman Dep., at 55–56].

Experian's internal records indicate that First Franklin first reported Plaintiff's debt to Experian on February 19, 2020. [Doc. 96-3, Declaration of Mary Methvin ("Methvin Decl."), ¶ 6; Doc. 102-5, 30(b)(6) Deposition of Mary Methvin ("30(b)(6) Methvin Dep.") at 99]. At that time, First Franklin reported to Experian that Plaintiff's account was opened on December 31, 2019; the account condition was "open"; the account status was "current"; there was no history of any late payments; and the balance was $1,336 as of December 2019. [Methvin Decl. ¶ 6].

On April 13, 2020, the bankruptcy court entered a discharge order in Plaintiff's bankruptcy. [DSMF ¶ 12; Doc. 96-7, Discharge Order]. Experian received notice of Plaintiff's bankruptcy discharge from its public-records vendor, LexisNexis Risk Data Management, on the same day the bankruptcy court entered the Discharge Order. [DSMF ¶ 14].

---

3 Plaintiff testified that after he filed for bankruptcy, he tried to make a payment to First Franklin, but the lady he spoke to told him he couldn't make any more payments because he had filed for Chapter 7 bankruptcy. [Coleman Dep. at 32–33, 36–38].



AO 72A
(Rev.8/82)

Upon notice that a consumer has received a discharge in a Chapter 7 bankruptcy proceeding, Experian applies an automated "scrub" procedure to that consumer's credit files. [DSMF ¶ 15]. The scrub process evaluates the debts in a consumer's credit file, identifies pre-bankruptcy debts Experian considers most likely to have been discharged in the consumer's bankruptcy, and causes those debts to report as discharged in bankruptcy and with a zero ($0) balance by applying an industry-standard code known as a Consumer Information Indicator with a value of "E." [Methvin Decl. ¶ 8].

Experian developed its bankruptcy scrub in order to implement the procedures it had agreed to pursuant to a class action settlement agreement and order issued by the U.S. District Court for the Central District of California in *White v. Experian Information Solutions, Inc.*, No. SA CV 05-1070 DOC (MLGx) (Lead Case) and related cases (including No. 05-cv-1073, et al.), 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) (hereinafter "the *White* Order"). [Methvin Decl. ¶ 8; Doc. 96-8, the *White* Order]. The action asserted claims on behalf of a putative nationwide class of consumers relating to each of the defendants' (including Experian's) procedures for reporting pre-bankruptcy debts of consumers who have obtained discharges through Chapter 7 bankruptcy proceedings. *White*, 2008 WL 11518799, at *1.



AO 72A
(Rev.8/82)

The *White* Order provides, in pertinent part, that Experian (and the other defendant credit reporting agencies ["CRAs"]), shall "assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of discharge of these categories of debt, and without either the affected creditors or Consumers reporting the debt to Defendants as having been discharged." *White*, 2008 WL 11518799, at *13, ¶ 5.1. According to Experian, the *White* Order required its scrub to exclude debts last reported with a "Current Status," which the Order defined as "an account status or rating indicating that, as of the date of last reporting, there is no outstanding, overdue, and delinquent balance currently due." [DSMF ¶ 18, citing the *White* Order, ¶¶ 2.10, 3.2(b)(ii)(E)]. An outstanding balance on an account, alone, was not a factor in the scrub to determine whether the account was to be considered for being reported as included in bankruptcy. [Doc. 102-2, Pl.'s Supplemental Statement of Additional Material Facts ("PSAF"), ¶ 8]. If a creditor independently informs Experian that a debt was discharged in bankruptcy, Experian will update the consumer's file to reflect a $0 balance and the discharge. [30(b)(6) Methvin Dep. at 15–17]. Here, First Franklin did not update its reporting of Plaintiff's account after February 19, 2020, and it did not add any



AO 72A
(Rev.8/82)

bankruptcy indicators to its tradeline that would have informed Experian that the debt was included in bankruptcy. [Methvin Decl. ¶ 6].

On April 20, 2022, Experian applied its bankruptcy scrub procedure to Plaintiff's credit file and updated multiple pre-bankruptcy debts to report as discharged in bankruptcy and with a $0 balance. [DSMF ¶ 19; Methvin Decl. ¶ 10; PSAF ¶¶ 4–5]. Experian's scrub excluded Plaintiff's First Franklin account because it was reporting with an account status of "open/never late" and "current." [DSMF ¶ 20; Methvin Decl. ¶ 10; Doc. 102-5, 30(b)(6) Methvin Dep. at 27]. Experian therefore did not report that the account had a $0 balance or that it had been discharged in bankruptcy. [PSAF ¶ 2]. It is undisputed that Experian does not look at bankruptcy dockets when determining whether to report an account as included in bankruptcy. [PSAF ¶ 23].

Experian continued to monitor Plaintiff's credit file following his bankruptcy through a secondary "look-back" scrub that updated pre-bankruptcy debts that did not qualify for its initial scrub or that were later added to the consumer's credit file. [DSMF ¶ 21]. The secondary scrub evaluates a consumer's credit file for 18 months following a consumer's bankruptcy discharge. [Methvin Decl. ¶ 11]. According to Experian, its secondary scrub did not update Plaintiff's First Franklin account because

First Franklin never reported that Plaintiff's debt was anything other than open and current. [*Id.*].

In fact, other than its initial report in February 2020 that Plaintiff's account was "open" and "current" with a balance of $1,336, First Franklin never updated its tradeline. [30(b)(6) Methvin Dep. at 70]. Where, as with Plaintiff's First Franklin account, a furnisher stops updating an open account with a balance amount greater than zero in Experian's files for more than 90 days, Experian describes those tradelines as "stale accounts, " meaning accounts that are "not as current or as up-to-date as . . . we would ideally like." [PSAF ¶¶ 11–12, 14, 17; 30(b)(6) Methvin Dep. at 80–81].

Experian provides what are called metric reports on a monthly basis to data furnishers like First Franklin to help them "evaluate the data that they're sending and look for any type of errors and help them be in better compliance [and] make corrections as needed to their reporting." [PSAF ¶ 10; Doc. 111, Def.'s Resp. to PSAF ¶ 10; 30(b)(6) Methvin Dep. at 78]. The reports provide notice of reporting errors and anomalies. One such anomaly occurs when a furnisher stops updating an account in Experian's files. [PSAF ¶ 11]. Experian's 30(b)(6) witness testified that Experian, however, will not take any action on stale accounts that Experian considers to not be "negative"—i.e., there is no history of missed payments or collections. [PSAF ¶ 18;



AO 72A
(Rev.8/82)

30(b)(6) Methvin Dep. at 75–76]. She testified further that Coleman's First Franklin account did not appear to be "negative."

On July 20, 2020 and again on December 4, 2020, in response to Plaintiff's requests, Experian provided Plaintiff with a copy of his credit file (also known as "consumer disclosures" or "file disclosure"). [DSMF ¶ 23; Methvin Decl. ¶ 13; Doc. 100-1 (corrected Ex. I, July 20, 2020 file disclosure); Doc. 96-10 (Ex. J, Dec. 4, 2020 file disclosure)]. Experian provides consumer disclosures only to the consumer himself and does not share them with third parties. [Methvin Decl. ¶ 12]. The First Franklin account was one of only two debts reporting in good standing on Plaintiff's July 2020 file disclosure and was the only debt reporting in good standing on his December 4, 2020 file disclosure. On each, the First Franklin account was listed in the area of the report titled, "Your accounts in good standing," and the account was reporting with the status of "Open/Never late" and a recent balance of "$1,336 as of Dec[.] 2019." [Doc. 100-1 at 4; Doc. 96-10 at 4].[4] By contrast, in December 2020,

4 The credit report dated December 4, 2020 provided by Plaintiff to support his response to Experian's motion for summary judgment has a different format than the one produced by Experian; Plaintiff's identifies the status of his First Franklin account as "Open/Never late" and "Current on payments" as of December 2019, but it does not mention whether the account is or is not "in good standing." [Doc. 103-1 at 6–7 (sealed)]. Unlike the First Franklin account in Plaintiff's version of the credit report, however, the accounts listed as having been "Discharged through Bankruptcy



AO 72A
(Rev.8/82)

nonparty Equifax reported the First Franklin account as closed with a $0 balance owing.[5] [Doc. 103-2 at 10–11 (sealed)].

Plaintiff testified that he did not pay attention to or review the information on his Experian credit reports; instead, he forwarded the reports to his attorneys, upon whom he was relying to monitor his credit. [Coleman Dep. at 65–67, 69, 78–79, 81, 83, 91]. Plaintiff testified he did not get personally involved in the details of what was reporting or not reporting, and/or why. [*Id.* at 66]. Although Plaintiff knew he could dispute inaccurate information directly with Experian, neither he nor his bankruptcy attorneys ever did so. [DSMF ¶ 27; Coleman Dep. at 26; Doc. 96-12 at 6–7, Pl.'s Resp. to Requests for Admission Nos. 8 and 9]. Thus, it is undisputed that no one—neither Coleman nor First Franklin—ever advised Experian that the First Franklin debt had been discharged.

---

Chapter 7" are marked "Potentially Negative" in red letters. [*Id.* at 7–13]. The entry for First Franklin does not contain that indicator, from which one could reasonably infer that the account was showing as in good standing or at least not derogatory or delinquent on the December 4, 2020 credit report (file disclosure).

5 It is interesting to note, however, that the Credit Karma report for Equifax that Plaintiff has filed to support his opposition also fails to list the First Franklin account as being included in Chapter 7 bankruptcy or "Bankruptcy discharged" like some of the other accounts listed in the same Credit Karma Equifax credit report. [Doc. 103-3 (sealed), Ex. 8, at 10–11, COLEMAN000139–140].

On December 2, 2020, Plaintiff and his wife jointly applied for an auto loan with Ally Financial ("Ally"). [DSMF ¶ 28]. Ally made a "hard inquiry" into Plaintiff's Experian credit file in connection with that application.[6] [DSMF ¶ 29; Methvin Decl. ¶ 13]. Experian has submitted a declaration, under penalty of perjury, of Kelly Maynard, Senior Director for Ally, in support of its motion for summary judgment. [Doc. 96-14, Declaration of Kelly Maynard ("Maynard Decl."), ¶ 5]. In the declaration, Maynard avers that the report provided to Ally in response to its hard inquiry originated from an Experian affiliate, Clarity, and it did not include any information about Plaintiff's First Franklin account. [*Id.*]. Coleman has not disputed this fact.

---

6 "The FCRA expressly requires CRAs, upon request by a consumer, to identify each person or entity (i.e., user) that procured a consumer report on that individual ... during the 1-year period preceding the date on which the request was made. 15 U.S.C. § 1681g(a)(3)(A)(i)-(ii). An 'inquiry' is a factual record of when a consumer's credit file was accessed by a user and the user received information about a particular consumer." *Steed v. Equifax Info. Servs., LLC*, No. 1:14-cv-00437-SCJ-CMS, 2016 WL 7888040, at *3 (N.D. Ga. July 15, 2016). "A 'hard' inquiry indicates that a user accessed the consumer's report for the purpose of making a credit decision. Such access is normally initiated in response to a consumer seeking credit, such as a mortgage, credit card, auto loan, or personal finance loan. . . . [H]ard inquiries in [credit reports] . . . let potential creditors know where the consumer has sought credit, when, and with whom. . . . Hard inquiries are generally considered in credit score development and are often a factor in a consumer's credit score." *Id.* "Hard inquiries can lower a consumer's credit score and be used as a basis for a denial of credit." *Id.* at *4.



AO 72A
(Rev.8/82)

Ally also obtained information about Plaintiff from two other consumer reporting agencies, TransUnion and SafeStream, in connection with Plaintiff's auto loan credit application. [*Id.* ¶ 4]. TransUnion's credit report included tradeline detail, and reported Plaintiff's First Franklin account as in good standing and open/never late. [*Id.* ¶ 6]. According to Maynard, "A tradeline reporting in good standing like Mr. Coleman's 1st Franklin Financial Account would not be a factor that would cause someone to be denied credit by Ally when applying for a car loan." [*Id.*]. "After reviewing the application and considering the information Ally obtained regarding the co-applicants, including the information provided by Experian, Ally was not agreeable to handling the proposed transaction," and sent Plaintiff a denial letter on December 16, 2020, informing him that it was denying his application based on the following key factors: "a) Insufficient number or no open accounts recently reported; b) [A] nontraditional credit inquiry at Clarity too recently; c) [T]oo high a total number of inquiries; and d) Lack of sufficient relevant bankcard or revolving account information." [*Id.* ¶ 8 (internal quotation marks omitted), citing Ally/Coleman 000047]. According to Maynard, the First Franklin account was not provided as a reason for, and had no bearing on, Ally's decision not to handle the proposed transaction. [*Id.*]. Again, Coleman has not disputed this evidence.



AO 72A
(Rev.8/82)

As reflected on the December 4, 2020 credit report provided by Plaintiff, there were ten hard inquiries to Experian after his bankruptcy discharge, indicating that following Plaintiff's bankruptcy discharge, Plaintiff applied for credit or sought financing from ten different entities, including Ally. [PSAF ¶¶ 35–45; Doc. 103-1 at 15]. Plaintiff testified that he was denied credit by each of those potential creditors, but he is "not sure" and does not know if the reason any of them provided for denying him credit was because of the First Franklin account. [Coleman Dep. at 76, 94–95, 96, 100]. As with the Experian consumer disclosures, Plaintiff testified that he did not review the denial letters, other than to see that they were credit denial letters; he just forwarded them to his lawyers.[7] [*Id.* at 95]. When asked during his deposition if it was correct that he sued both Experian and TransUnion about the reporting of his First Franklin account, he replied, "My lawyer sued them. I didn't sue no one. My lawyer sued them. I'm not an expert." [*Id.* at 67].

7 Although Plaintiff's counsel acknowledged during his deposition that they had received copies of the credit denial letters and would produce them, the only credit denial letter the Court has located in the record was a May 2021 letter from Chase, and that was filed under seal by Experian, not Plaintiff. [Doc. 97-1 at 2, Ex. O; Coleman Dep. at 94]. That letter made no mention of Experian providing any information concerning Plaintiff's First Franklin account, positive or negative.

Experian does not store copies of the credit reports or information sent to third party subscribers and does not maintain a permanent record of what information it provides to subscribers who make a hard inquiry. The information provided depends on what information the subscriber requests, and may include a full report with account-level detail or may include more limited information, such as a credit score. [Methvin Decl. ¶ 14; 30(b)(6) Methvin Dep. at 94–95]. Experian does not have a record of the information it provided to Ally. [Methvin Decl. ¶ 15]. And Coleman has provided no evidence as to what, if any, information concerning Plaintiff's First Franklin account was provided to any of the entities who made hard inquiries into Plaintiff's Experian credit file. In fact, Coleman has provided no evidence to determine which credit reporting agency's information was used in determining whether to approve his credit applications. [Doc. 96-13 at 22].[8]

8 This lack of admissible evidence is consistent with Plaintiff's answers to Experian's Request for Admission No. 5 (and Interrogatory No. 24): "Plaintiff has been denied credit opportunities. The creditor did not explicitly state which credit reporting agency was used in determining whether to approve Plaintiff's application. *Upon information and belief*, Plaintiff was denied credit as a result of Experian's inaccurate reporting." [Doc. 96-13 at 22 (emphasis added)].



AO 72A
(Rev.8/82)

## III. DISCUSSION

Plaintiff's complaint alleges that Experian negligently and willfully violated Section 1681e(b) of the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently Experian reported inaccurate information about Plaintiff's First Franklin discharged debt, damaging his credit score and causing other damages, including unspecified credit harm, loss of credit opportunity, credit denials, financial harm, and emotional distress. [Doc. 1, Compl., ¶¶ 1, 55, 57, 65, 80]. Plaintiff's Complaint specifically alleges that Experian inaccurately reported Plaintiff's First Franklin account as open/never late with an outstanding balance of $1,336 when it should have reported the account as included in Plaintiff's bankruptcy discharge on April 13, 2020, with a $0 balance. [*Id.* ¶¶ 45–46]. Plaintiff alleges "upon information and belief" that Experian's inaccurate reporting was responsible for the denial of an automobile loan and/or one or more personal loans that he applied for following his bankruptcy discharge. [*Id.* ¶¶ 58–59].



AO 72A
(Rev.8/82)

**A. 15 U.S.C. § 1681e(b)**

Section 1681e(b) of the FCRA requires a CRA preparing a "consumer report" to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1354 (N.D. Ga. 2021) (citing 15 U.S.C. § 1681e(b)). To establish a prima facie violation of Section 1681e(b), a consumer plaintiff must present evidence that (1) a credit reporting agency's "consumer report" contained factually inaccurate information; (2) that the procedures it used in preparing and distributing the report were unreasonable; and (3) that the consumer plaintiff was injured as a result. *Id.* (citing *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021)); *see also Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1157, 1160 (11th Cir. 1991); *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002).

The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a [CRA] bearing on a consumer's credit worthiness, credit standing, credit capacity, character, [or] general reputation ... which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [credit]." 15 U.S.C.



AO 72A
(Rev.8/82)

§ 1681a(d)(1). Therefore, unlike violations under other provisions of the FCRA, a violation of Section 1681e(b) concerns only information communicated about a consumer to a third party. *Benjamin*, 561 F. Supp. 3d at 1354 (citing *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015) (distinguishing between the terms "consumer report" and credit "file," and concluding that a "'consumer report' requires communication to a third party")).

The Eleventh Circuit has recently adopted a definition of "maximum possible accuracy" that requires CRAs' information to be "factually true and also unlikely to lead to a misunderstanding." *Benjamin*, 561 F. Supp. 3d at 1354–55 (citing *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020)). This definition requires courts to "look to the objectively reasonable interpretations of the report." *Id.* In other words, "whether a report is misleading is an objective measure, one 'that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting.'" *Erickson*, 981 F.3d at 1252 (citing *Cahlin*, 936 F.2d at 1158). "If a report is so misleading that it is objectively likely to cause the intended user to take adverse action against its subject, it is not maximally accurate. On the other hand, the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice



AO 72A
(Rev.8/82)

about its subject would not render the report objectively misleading." *Id.* To succeed on his claim, Plaintiff needs to show both that a consumer report provided by Experian to a third party failed to comply with the FCRA's "maximum possible accuracy" standard (in other words, the consumer report was inaccurate) and that the inaccurate report caused him to suffer damages. *Id.* at 1250–51.

In its motion for summary judgment, Experian argues that Plaintiff's § 1681e(b) claim fails as a matter of law because (1) Plaintiff cannot prove or establish that the information it reported about the First Franklin debt to any third party was inaccurate; and (2) Plaintiff has failed to come forward with evidence from which a reasonable jury could find causation and damages.

**1. Did a Consumer Report Provided by Experian Contain Factually Inaccurate Information?**

Experian first argues that the information it reported was accurate because the First Franklin debt was not discharged in Plaintiff's bankruptcy.

The parties strongly disagree about what statutory provision, case law, and/or legal standards apply to pre-bankruptcy debts like Plaintiff's First Franklin secured loan that are neither listed nor scheduled in the plaintiff's bankruptcy papers. Plaintiff contends that such a debt is discharged by operation of law in a subsequent Chapter 7



AO 72A
(Rev.8/82)

"no-asset" bankruptcy discharge. Experian, on the other hand, asserts that debtors must include such debts in their bankruptcy papers for there to be a discharge and that when a debt is not included, the debtor must affirmatively show that his failure to list a creditor was an honest mistake. Both parties acknowledge there is a circuit split on this issue, with cases both in this circuit and in other circuits going different ways. The question is complicated by the fact that Experian also claims (and Plaintiff does not dispute) that it applied its bankruptcy scrubs in accordance with the *White* Order, and as a result, Plaintiff's First Franklin debt was not reported by Experian as having been discharged in Plaintiff's Chapter 7 bankruptcy. Thus, whether the information was accurate or not depends on whether the First Franklin debt was discharged by operation of law in April 2020.

Experian chiefly relies on the Eleventh Circuit case *In re Baitcher*, 781 F.2d 1529 (11th Cir. 1986), for the proposition that because Plaintiff omitted from his bankruptcy schedules his First Franklin debt, and never sought to correct that omission, that his debt was excluded from his bankruptcy discharge as one that was neither listed nor scheduled in a timely fashion, under 11 U.S.C. § 523(a)(3). [Doc. 96 at 7]. According to Experian, the question of whether the debt was or was not discharged is



AO 72A
(Rev.8/82)

a legal question that neither the courts nor the FCRA require Experian to determine.[9] [Doc. 96, Experian Br., at 10, citing *Hunt v. JPMorgan Chase Bank, N.A.*, 770 F. App'x 452, 458 (11th Cir. 2019) (stating that to prevail on a § 1681e(b) claim, a "plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions"); *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 568 (7th Cir. 2021) (holding that the "central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone.") (italics in original); *Sessa v. Linear Motors, LLC*, No. 19-cv-9914-KMK, 2021 WL 6052134, at *7 (S.D.N.Y. Dec. 20, 2021) ("All circuit courts to have opined on whether accuracy in the FCRA context includes legal inaccuracies are unanimous: [t]he claimed inaccuracy must be factual,

---

9 A federal court in Illinois recently rejected the same argument Experian makes here: "[T]he Court rejects Experian's argument that updating discharged accounts requires a legal determination that CRAs are not obligated to make. ... This is not a case where Experian need resolve complex legal issues. Experian can reasonably apply a Chapter 7 bankruptcy discharge order to a consumer's credit file, as evidenced by the comprehensive *White* Order." *Laura v. Experian Info. Sols., Inc.*, No. 20-cv-01573, 2022 WL 823853, at *3 (N.D. Ill. Mar. 18, 2022) (citing *Chuluunbat*). The Eleventh Circuit also recently rejected a similar argument in *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937, 946 (11th Cir. 2021) ("The bankruptcy court's discharge was unclear, but there is no doubt that Losch's mortgage was discharged. Thus, this case doesn't involve a legal dispute about the validity of the underlying debt."). *See also Benjamin*, 561 F. Supp. 3d at 1360 ("there is nothing particularly complicated about the effect of a Chapter 7 bankruptcy. Experian's own procedures already recognize the consequences of a general discharge in Chapter 7 bankruptcy.").



AO 72A
(Rev.8/82)

not legal.")].

Plaintiff responds that pursuant to bankruptcy law, all of a no-asset Chapter 7 debtor's pre-petition debts are discharged, including unlisted and unscheduled debts. [Doc. 102, Pl.'s Resp. Br., at 7–8]. Plaintiff has cited numerous cases that support his position, as well as the relevant bankruptcy statute, 11 U.S.C. § 727(b), which provides for the discharge of "all debts that arose before the date" of the discharge order in a Chapter 7 bankruptcy, and makes no distinction between scheduled or unscheduled debts. Thus, Plaintiff contends that in a no-asset Chapter 7 bankruptcy matter like Plaintiff's, "a proof of claim need not be filed" because there are no assets to be claimed; therefore, the exceptions listed in 11 U.S.C. Section 523(a)(3)(A) do not apply, and discharge is unaffected by failing to schedule a debt. [*See* Doc. 102 at 8, citing, among other cases, *Keenom v. All Am. Mktg.*, 231 B.R. 116, 129 (Bankr. M.D. Ga. 1999) (holding that in a no-asset Chapter 7 case, no purpose would be served by reopening the case to allow debtors to amend their schedules to include a previously omitted creditor because the statute defining the scope of a Chapter 7 debtor's discharge does not create an exception for unlisted or unscheduled debts, and all of a debtor's pre-petition debts, including unlisted or unscheduled debts, are discharged in Chapter 7, subject only to statutory dischargeability exceptions [such as child support,



AO 72A
(Rev.8/82)

alimony, recent purchase of luxury goods, education loans, government fines, among other exceptions]; *Benjamin*, 561 F. Supp. 3d at 1360; *see also In re Bledsoe*, No. 12-77911-MGD, 2013 WL 3776350, at *3 (Bankr. N.D. Ga. June 11, 2013) ("[I]n a no-asset, no-bar-date Chapter 7 case, amending schedules to add omitted creditors does not affect whether or not the debts held by those creditors are discharged.").

The undersigned finds this thorny legal question need not be answered in this case to resolve the pending motion for summary judgment. However, having studied the arguments and relevant authority, it is my view that the legal authority cited by Plaintiff on this issue is more persuasive and on point than Experian's. There is no probative evidence that Plaintiff fraudulently, intentionally, and/or in bad faith purposely failed to include his First Franklin debt in his bankruptcy papers, or formally sought to reaffirm his debt to First Franklin. As such, bankruptcy law operates to discharge the debt. 11 U.S.C. § 727(b); *In re Bledsoe*, 2013 WL 3776350, at *3. Viewing the facts in the light most favorable to Coleman, the non-movant, a reasonable juror could conclude that (1) when Plaintiff received a discharge in April 2020 in his no-asset Chapter 7 bankruptcy, his unlisted secured debt to First Franklin was discharged by operation of law; and (2) after Plaintiff received his bankruptcy discharge, it was no longer accurate for Experian to report that the First Franklin



AO 72A
(Rev.8/82)

account was "open" or that it had a $1,336 balance. To the extent that Experian seeks summary judgment based on Coleman's failure to show an inaccuracy in Experian's reporting, I will recommend that the motion be denied.

**2. Plaintiff Has Failed to Show a Causal Link Between the Credit Denials and Experian's Reporting of the First Franklin Account**

The FCRA does not hold CRAs like Experian liable, however, for all inaccuracies. *Cahlin*, 936 F.2d at 1156; 15 U.S.C. §§ 1681n(a), 16810(a). Rather, "[a]s with most tort actions, a FCRA plaintiff must produce sufficient evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit." *Enwonwu v. TransUnion, LLC*, 364 F. Supp. 2d 1361, 1365–66 (N.D. Ga. 2005) (citing Restatement (Second) of Torts § 431(a)), *aff'd*, 164 F. App'x 914 (11th Cir. 2006)).

In his Complaint, Coleman alleges that one of the ways he was harmed was by being denied credit. He has produced evidence that after his bankruptcy discharge, he was repeatedly denied credit. He has not, however, tied those denials to Experian's reporting of the First Franklin account as "open/never late," and with a $1,336 balance. There is no evidence that the allegedly inaccurate information concerning Plaintiff's First Franklin account operated as an adverse or negative factor in determining



AO 72A
(Rev.8/82)

Plaintiff's eligibility for credit with any creditor. *See* 15 U.S.C. § 1681a(d)(1).

Here, the only credit reports that Plaintiff has specifically identified or pointed to—in his deposition testimony, his undated declaration, and/or the exhibits submitted in response to Experian's motion for summary judgment that contain the allegedly inaccurate First Franklin tradeline and/or inaccurate information pertaining to the loan that Plaintiff obtained from First Franklin in December 2019—are those that Plaintiff requested from Experian and/or his legal counsel obtained from Experian, Credit Karma, and/or UCS on Plaintiff's behalf. [*See* Doc. 103 at 2, Pl.'s Ex. 5 (sealed) (UCS credit report provided to Plaintiff's bankruptcy attorneys); Doc. 103-1, Pl.'s Ex. 6 (sealed), Experian credit report dated 12/4/2020; Doc. 102-10, Pl.'s Decl., at 4 ¶¶ 12–17]. He has provided no evidence of what Experian provided to any of the entities that denied him credit. As such, Plaintiff has failed to point to any probative evidence showing that Experian provided any inaccurate and/or derogatory information about Plaintiff's First Franklin account to any specific third party creditor or potential creditor that adversely affected its decision to extend or not extend credit to Plaintiff as a result of Experian's inaccurate reporting of the status of Plaintiff's First Franklin account.

Even viewing the facts in the light most favorable to Plaintiff and assuming that



AO 72A
(Rev.8/82)

Experian did fail to accurately report that Plaintiff's First Franklin debt was discharged by operation of the bankruptcy discharge order issued in his 2020 bankruptcy, Plaintiff has failed to show that Experian published that inaccurate information to any particular third party, or that Experian's publication proximately caused Plaintiff to suffer the credit harm that he alleges. In other words, Plaintiff has failed to connect the dots between any alleged erroneous or inaccurate reporting by Experian and his credit denials.

Plaintiff testified that he was "not sure" if a creditor ever told him that he was being denied credit because of the way Experian was reporting his First Franklin debt. [Coleman Dep. at 93–95]. Plaintiff further testified he did not know what any of his credit denial letters stated were the reasons credit was being denied because he never reviewed them except to see that the letters were denying his credit requests. [*Id.* at 94–95]. As noted earlier, there is only one denial letter in the record (which was submitted by Experian), and it states that the creditor, Chase, denied Plaintiff's request to open an account because Chase was not able to verify his identity. That explanation has nothing to do with Experian's purported inaccurate reporting of Plaintiff's First Franklin debt. [Doc. 97-1 at 2, Ex. O (sealed)]. The letter from Chase also references Plaintiff's credit score of 508, which Experian calculated as of May 3, 2021. [Doc. 97-



AO 72A
(Rev.8/82)

1 at 2]. Nothing in the letter indicates that Experian provided any tradeline information to Chase concerning Plaintiff's First Franklin account. Moreover, the letter lists five "key factors" that Chase determined had adversely affected Coleman's credit score: insufficient number of recently reported open revolving accounts; insufficient number of accounts consistently paid on time over the last two years; too many accounts opened in the last two years not paid on time; average time accounts have been open is too short; and number of inquiries. [*Id.*].

It is not clear from the Chase letter whether Experian provided those factors to Chase as an explanation for the credit score it calculated for Plaintiff, or whether those are generally factors that can adversely affect one's credit score. There also is no indication in the record what Plaintiff's Experian credit file was showing as of May 3, 2021. But even viewing the facts in the light most favorable to Plaintiff, and assuming that Experian in May 2021 was still showing Plaintiff's First Franklin account as "on time/never late," current, and in good standing, Plaintiff has failed to show that having an account reported as being on time/never late and in good standing had a negative (or any) effect on his credit score, or that Chase used that as a factor in its decision not to grant Plaintiff's request to open an account there.

Notably, another factor cited by Chase was "too many accounts opened in the

last two years not paid on time." [*Id.*]. Plaintiff has failed to show or articulate how moving Plaintiff's one positive reported account "in good standing" to the status of account "not paid on time" and/or "discharged in bankruptcy" would have improved his credit score or positively impacted Chase's decision whether to grant Plaintiff's request to open an account. Coleman had ample opportunity to take discovery in this case and has failed to establish or point to any evidence in the record showing that Experian's alleged reporting that Plaintiff's First Franklin debt was in good standing was a factor that caused Chase (or any other creditor) to deny Plaintiff's request for credit or request to open an account. Even Plaintiff himself acknowledged that showing that an account is "in good standing" is a positive report, not a derogatory one, and that the best thing for one's credit is to have accounts reported that are in good standing. [Coleman Dep. at 61, 71]. *See Enwonwu*, 364 F. Supp. 2d at 1366 ("Based on these facts, . . . the record does not support the inference that the inaccurate information on Plaintiff's TransUnion credit report was a substantial cause of Plaintiff's alleged injuries.").

Plaintiff has also failed to come forward with evidence sufficient to show a material fact dispute as to a causal connection between the allegedly inaccurate reporting of the First Franklin account and the denial of the car loan with Ally. [Doc.



AO 72A
(Rev.8/82)

96-12 at 5, Pl.'s Resp. to RFA No. 6]. At the time he applied for a car loan with Ally (in December 2020), Plaintiff's First Franklin account was the only debt reporting in good standing on his Experian credit disclosure. [Doc. 96-10]. Ally's representative attested in a sworn declaration that this reporting "would not be a factor that would cause someone to be denied credit by Ally when applying for a car loan." [Maynard Decl. ¶ 6]. Experian's 30(b)(6) witness testified similarly, stating, "[I]t's even common sense that an account that's in a positive status, open, never late, even with a balance, looks better to a potential lender than an account that has been included in bankruptcy." [30(b)(6) Methvin Dep. at 58].

Coleman relies on the Eleventh Circuit decision in *Losch* to argue that evidence of a "hard inquiry" alone is sufficient to show harm. I find that the *Losch* decision does not support Plaintiff's argument for four reasons. First, although Ally made a "hard inquiry" with Experian in connection with Plaintiff's credit application, the information Ally obtained was limited to a report from Clarity, an Experian affiliate, that did not include information about the First Franklin debt or other individual accounts. [Methvin Decl. ¶ 15; Maynard Decl. ¶ 5]. The Eleventh Circuit's assumption in *Losch* that hard inquiries listed on a consumer's credit report equate to the disclosure of a complete credit report that includes information about a contested



AO 72A
(Rev.8/82)

tradeline, *Losch*, 995 F.3d at 943, is not appropriate here, given this evidence.

Second, the *Losch* Court made its assumption in the context of an Article III standing analysis, not on the merits. *Losch*, 995 F.3d at 942. Third, unlike Plaintiff, the consumer in *Losch* contacted Experian directly to dispute its reporting that he was delinquent on his mortgage when the mortgage had been included in his Chapter 7 bankruptcy and was discharged. Thus, in that case, Experian was put on notice that its reporting was inaccurate, triggering an obligation to investigate. *Id.* at 940. Here, it appears that Coleman "lay in wait," with no desire to correct the reporting and with the obvious goal of filing a lawsuit over the issue.

Finally, the erroneous reporting in *Losch* was negative; Experian was reporting that the account had a balance of almost $140,000, a past due amount totaling $10,006, and was more than 180 days late, when none of that was true. *Id.* By contrast, the First Franklin debt in this case was reporting as open/never late and in good standing.

Plaintiff has pointed to no evidence in the record of any creditor or potential creditor who made hard inquiries into Plaintiff's credit file that either received information about Plaintiff's First Franklin debt or that denied credit because of it. Thus, Plaintiff's allegations of credit harm in this case attributable to Experian are not



AO 72A
(Rev.8/82)

supported by any competent evidence.[10]

In failing to produce any probative evidence showing that Experian published inaccurate information about Plaintiff's First Franklin debt to any third party, and in failing to show a causal link between the allegedly inaccurate information and any credit denial, Plaintiff has failed to meet his burden. *Enwonwu*, 364 F. Supp. 2d at 1367 ("Plaintiff having produced evidence that credit granting agencies merely obtained his Trans Union credit report, this Court has no difficulty concluding that Plaintiff has failed to satisfy the causation element of his prima facie case"). Plaintiff has failed to satisfy his affirmative duty of coming forward with evidence supporting his claim that Experian's inaccurate report caused him harm. *See id.* at 1365 (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160–61 (11th Cir. 1991) (because plaintiff "utterly failed to produce any evidence tending to show that he was damaged as a result of an allegedly inaccurate credit report," the court did not reach the substance of plaintiff's FCRA claims)).

Where, like here, the plaintiff has failed to satisfy his duty to come forward with

---

10 Plaintiff complains that Experian has not addressed the nine-plus other creditors besides Ally to whom Experian allegedly published inaccurate information. But it is Plaintiff's burden to point to evidence that supports his claim; not Experian's. *See Enwonwu*, 364 F. Supp. 2d at 1365 ("the burden of proving causation remains with the Plaintiff at all times and never shifts to the Defendant").

evidence supporting his claim that Experian's inaccurate report caused him harm, the Supreme Court has stated that Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In his brief opposing Experian's motion for summary judgment, Plaintiff fails to acknowledge the role that his poor credit history and Chapter 7 bankruptcy might have played in the denials of his requests for credit. Filing for bankruptcy can have a profound and lasting negative impact on a consumer's ability to obtain credit. *See Jaras v. Equifax, Inc.*, 766 F. App'x 492, 494 (9th Cir. 2019) (affirming dismissal for lack of Article III standing where "Plaintiffs' bankruptcies themselves cause[d] them to have lower credit scores with or without the alleged misstatements"); *accord* Consumer Financial Protection Bureau, "How does a bankruptcy affect my credit score?" *located at* http://www.consumerfinance.gov/ask-cfpb/how-does-a-bankruptcy-

affect-my-credit-score-en-1233/ (last visited Oct. 25, 2022) (observing that bankruptcies have a "very negative effect on your credit score" and will do so "for up to 10 years"); *see also Enwonwu*, 364 F. Supp. 2d at 1367 (granting summary judgment for the CRA where "[i]n light of the indisputably accurate adverse information on Plaintiff's credit report, the inaccurate entry—a civil judgment in the amount of $6,639—appears immaterial," and finding that the alleged inaccurate entry in the credit report was not a substantial factor in bringing about the injuries allegedly suffered by the consumer).

The same is true here. Even assuming that the inaccurate information about Plaintiff's First Franklin account was reviewed and/or used by a potential creditor, "the Eleventh Circuit has held that evidence of utilization by the credit granting agency, without more, cannot support the inference of causation." *Enwonwu*, 364 F. Supp. 2d at 1366 (citing *Cahlin*, 936 F.2d at 1161). Moreover, given the other adverse information on Plaintiff's Experian credit report, including multiple delinquent debts that were discharged in bankruptcy and multiple hard inquiries, the alleged inaccurate but positive Experian entry concerning Plaintiff's First Franklin account cannot be considered a "substantial factor" in bringing about Plaintiff's alleged injuries. [Doc. 100-1 at 2–3; Doc. 96-10; Doc. 96-14 at 3–4; Doc. 97-1 at 2 (sealed)].



AO 72A
(Rev.8/82)

### 3. Insufficiency of Other Damages Evidence

Plaintiff has also failed to come forward with sufficient evidence from which a jury could find that Experian's reporting caused him any other damages. A plaintiff may recover actual damages for any negligent violation of the FCRA, including "damages for humiliation, mental distress or injury to reputation and creditworthiness," even if the plaintiff has suffered no out-of-pocket losses. *See Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1365 (N.D. Ga. 2015); 15 U.S.C. § 1681o(a). "Damages are an element of [an FCRA] claim, and without evidence of damages, summary judgment is appropriate." *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1280 (N.D. Ga. 2006).

In his answers to interrogatories, Plaintiff stated that his "actual damages consist primarily of emotional distress." [Doc. 96-13 at 16, Resp. to Interrog. No. 13]. Plaintiff testified in his deposition that his decision to file bankruptcy caused him emotional distress, so much so that he had to start taking anti-depressants. [Coleman Dep. at 97]. He also testified to being distressed by his inability to secure credit following his bankruptcy:

> Emotional distress, meaning I can't get credit. I lost my wife and my children behind it. Trying to get a house and can't get credit every time I try to apply for something. And



AO 72A
(Rev.8/82)

> being embarrassed going into stores, try to apply for credit and telling me I can't be accepted for credit.

[*Id.* at 96]. Plaintiff testified that after receiving his bankruptcy discharge, he felt like he was "still in the same situation" as he was before. [*Id.* at 100]. According to Plaintiff, no one told him that was going to be a consequence of filing bankruptcy—that it would be very hard to get credit afterwards—and he testified that if he had to do it all over again, he would not file for bankruptcy. [*Id.* at 90, 97–99].

As to Experian's alleged inaccurate reporting about Plaintiff's First Franklin account, however, Plaintiff testified that he did not review the credit reports he received from Experian and instead forwarded them to his lawyers; he "didn't pay no attention" to whether Experian was reporting anything inaccurately in his credit report. [Coleman Dep. at 69, 78–81, 83]. He testified that he was "not sure" if Experian's reporting the account as being "open/never late" and in good standing was something he was particularly concerned about. [*Id.* at 105]. He also testified he was "not sure" whether there was anything incorrect about the way Experian reported his First Franklin account. [*Id.* at 64, 93]. He was also unsure whether he wanted the First Franklin account to report as discharged in bankruptcy rather than as an account in good standing. [*Id.* at 80]. Plaintiff further testified that his goal in filing this lawsuit



AO 72A
(Rev.8/82)

was to get rid of all the bankruptcy notations and negative reporting on his credit report, which did not happen; his accounts are still showing as negative and discharged in bankruptcy on his credit report. [*Id.* at 92].

Plaintiff has submitted a declaration titled, "Declaration of Edward Coleman in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration [sic]" which he contends constitutes sufficient evidence of emotional distress to create an issue of material fact as to damages. [Doc. 102-10 at 2–5 ("Pl.'s Decl.")]. Plaintiff argues that in *Losch*, the Eleventh Circuit held that "a self-serving, uncorroborated, non-conclusory affidavit" of the plaintiff's emotional distress is sufficient to create an issue of material fact, and asserts that he has met that standard in this case. [Doc. 102 at 17]. In *Losch*, the Eleventh Circuit reaffirmed its en banc decision in *United States v. Stein*, 881 F.3d 853, 858–59 (11th Cir. 2018), in which the Court held that "[a] non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it self-serving and/or uncorroborated." *Losch*, 995 F.3d at 944.

Unsworn declarations under penalty of perjury like Plaintiff's, however, are required to be signed *and dated*, in accordance with 28 U.S.C. § 1746. Plaintiff's unsworn declaration under penalty of perjury is signed, but not dated, and thus does



AO 72A
(Rev.8/82)

not comply with the statutory requirements governing such declarations. Courts have held that given the explicit language of the statute, such technically deficient unsworn affidavits submitted to show a genuine issue of material fact in the summary judgment context "must therefore be excluded from consideration." *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994); *accord Lentz v. Spanky's Restaurant II, Inc.*, 491 F. Supp. 2d 663, 669–70 (N.D. Tex. 2007) (declining to consider undated affidavit by the plaintiff because it failed to comply with Rule 56(e) and 28 U.S.C. § 1746).

Even if the court were to consider Plaintiff's technically deficient declaration, it fails to establish actual damages for another independent reason: it is contrary to Plaintiff's sworn deposition testimony. Plaintiff's undated declaration now claims that he reviewed his credit reports and saw that Experian was reporting he still owed the debt to First Franklin, and that he felt confused, panicked, anxious, depressed, and embarrassed by the inaccurate reporting that he now says he saw. [Doc. 102-10 at 4–5]. He claims that Experian's reporting of the First Franklin account made the "negative feelings" he had when filing for bankruptcy "reemerge," and it raised questions in his mind about why his credit reports were showing that he still owed First Franklin money, when First Franklin had refused his payments because of the bankruptcy. [*Id.* ¶¶ 15, 20]. He now claims that he reviewed his Experian credit

reports, "learned both Experian and TransUnion were reporting I still owed the debt to First Franklin," his review caused him to be "confused" and "panicked," and that it caused him to believe that Experian's inaccurate reporting of the First Franklin account was the cause of all his credit denials. [*Id.* ¶¶ 13–14].

Plaintiff's declaration is conclusory and directly contradicts his previous deposition testimony, making it insufficient to create a genuine issue of material fact under Rule 56. *See Bell v. City of Auburn, Ala.*, 722 F. App'x 989, 900 (11th Cir. 2018) (concluding that district court properly disregarded the plaintiff's sworn declaration because it was inherently inconsistent with his prior testimony, "and amounted to a transparent effort to create a genuine issue of fact."); *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

At his deposition, Plaintiff testified that being behind on his debts and filing for bankruptcy were what caused him emotional distress, to lose his family, lose sleep, feel anxious, depressed, and embarrassed; he testified that the effects of the bankruptcy



AO 72A
(Rev.8/82)

continue to this day because it is still difficult to get credit. [Coleman Dep. at 17–20, 99, 100]. He testified that he feels like he's in the same situation as before he filed for bankruptcy. [*Id.* at 100]. And as noted above, he had little or nothing to say about how the First Franklin account affected him. The undersigned declines to credit Plaintiff's undated and contradictory declaration.

Plaintiff has failed to point to any competent evidence tying any actual or emotional distress damages to Experian's publication of an inaccurate consumer report to a third party. Because Plaintiff's allegations of emotional distress lack evidentiary support other than his vague and contradictory assertions, he has failed to demonstrate a genuine dispute of material fact. To avoid summary judgment, "a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Because Plaintiff has failed to produce sufficient (or any) evidence of a causal connection and actual damage resulting from Experian's alleged negligent violation of Section 1681e(b), a reasonable jury would not award emotional distress or any other actual damages to Plaintiff. I therefore recommend that Experian's motion for summary judgment on Plaintiff's negligent violation claim be granted.

**4. Summary**



AO 72A
(Rev.8/82)

For the reasons discussed above, I conclude that Coleman has failed to come forward with evidence showing that he was harmed as a result of Experian's reporting of his First Franklin account. In the absence of actual damages, his 15 U.S.C. § 1681e(b) negligent violation claim fails as a matter of law.

**B. 15 U.S.C. § 1681n(a)**

Even if a plaintiff cannot show actual damages, he nevertheless may be entitled to statutory and/or punitive damages if he can show that the defendant willfully violated the FCRA. 15 U.S.C. § 1681n(a). To prove that Experian willfully failed to comply with Section 1681e(b), Plaintiff must establish that Experian either knowingly or recklessly violated that section. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). A CRA recklessly violates the Act if it takes an action that "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). A CRA that adopts a reading of the FCRA that is "not objectively unreasonable" based on the text of the Act, judicial precedent, or guidance from administrative agencies "falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 70. A CRA that adopts an



AO 72A
(Rev.8/82)

objectively reasonable reading of the Act does not knowingly violate the Act. *Id.* at 70 n.20. "A violation isn't willful where a defendant 'followed an interpretation that could reasonably have found support in the courts. . . .'" *Losch*, 995 F.3d at 947 (quoting *Safeco*, 551 U.S. at 70 n.20).

Plaintiff claims that he is entitled to statutory and punitive damages because Experian willfully violated the FCRA. Plaintiff specifically asserts that Experian willfully failed to employ reasonable procedures because it knew that Plaintiff's debts were discharged in bankruptcy but failed to update its First Franklin report to indicate that the account was included in bankruptcy. Plaintiff also argues that at the time of the reporting in this case, Experian was involved in multiple lawsuits challenging the same procedures, and thus "knew or had reason to know of facts that would lead it to understand it was running an unjustifiably high risk of violating the statute—a condition sufficient to show 'actionable recklessness.'" [Doc. 102, Pl.'s Br., at 26]. Plaintiff argues that despite its knowledge, Experian chose not to update its procedures to scrub for balances despite having the means to do so with minimal effort. [*Id.*, citing Deposition of Mukeshkumar Patel, Doc. 102-7 at 38–40].

Experian maintains that its procedures were authorized by, and in compliance with, the *White* Order. The record in this case appears to support Experian's position.

It is undisputed that Experian's exclusion of Plaintiff's First Franklin account from its bankruptcy scrubs complied with the procedures set forth in the *White* Order. [PSAF ¶ 24]. Although Plaintiff argues that his unscheduled pre-petition debt with First Franklin was discharged in bankruptcy by operation of law, the First Franklin tradeline fell into a narrow category of debts identified in the *White* Order to be excluded from the required bankruptcy scrub(s)—i.e., accounts reporting as open and with a current status (meaning "an account status or rating indicating that, as of the date of last reporting, there is no outstanding, overdue, and delinquent balance currently due"). [*White* Order, ¶¶ 2.10, 3.2(b)(ii)(E); Methvin Decl. ¶ 10]. The *White* court determined that the procedures in the *White* Order "are reasonable procedures to assure the maximum possible accuracy of [Experian's] reporting of credit information regarding Consumers who have received a discharge pursuant to Chapter 7 of the United States Bankruptcy Code," and stated that the procedures "are conclusively deemed to comply with the FCRA, including but not limited to Section 1681e(b) of that Act." 2008 WL 11518799, at *14 (*White* Order ¶ 5.4); *see also Benjamin*, 561 F. Supp. 3d at 1344.

The *White* Order further provides:

> This Order shall preclude all future litigation or attempted litigation under the FCRA . . . regarding the reasonableness of Defendants' post-discharge reporting of Consumer credit



AO 72A
(Rev.8/82)

> information relating to pre-bankruptcy debts or civil judgments, as well as the reasonableness of Defendants' procedures for reinvestigations of Consumer disputes regarding the same, brought by any and all Consumers receiving bankruptcy discharges after the date of this Order. Consumers hereby are precluded from contending, absent a fundamental change in circumstance, that the procedures set forth in this Order are not reasonably designed to assure maximum possible accuracy under Section 1681e(b) . . . .

[*White* Order ¶ 5.6]. Because Plaintiff was not part of the plaintiff class in *White*, however, the *White* Order is not binding on this Court. *Benjamin*, 561 F. Supp. 3d at 1344 ("*White* is not binding on this Court and does not necessitate that this Court find in this case that Experian's procedures complied with the FCRA) (citing *Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 771 (D. Minn. Aug. 13, 2020) ("That a report complies with the *White* settlement does not by itself establish that the report complies with § 1681e(b), however. After all, *White* is not binding on this Court.")).

Although the evidence shows that sometime after this lawsuit was filed, Experian made some changes to its bankruptcy scrub procedures and modified the dates of its look-back scrub so as to be more in line with the way TransUnion and Equifax were applying their scrub procedures, Coleman has presented no evidence that his First Franklin tradeline would have been treated any differently even under the newer scrub procedures. [Doc. 51-3, Kimberly Cave Decl., ¶¶ 5–6, 9; Doc. 74 at 2 n.1;



AO 72A
(Rev.8/82)

Doc. 74-6 ¶¶ 9–10].

As noted above, the fact that Experian's reporting procedures at issue in this lawsuit were consistent with those approved of in *White* does not by itself establish that its reporting complied with Section 1681e(b) because *White* is not binding on this Court. Nevertheless, as Judge Story ruled in *Benjamin*, "Experian's implementation of procedures that were consistent with those approved of in *White* does support the conclusion, as a matter of law, that Experian did not knowingly or recklessly violate the FCRA." *Benjamin*, 561 F. Supp. 3d at 1344. Other courts that recently considered this same question have reached the same conclusion. *See, e.g.*, *Beers v. Experian Info. Sols., Inc.*, No. 20-cv-1797-WMW-JFD, 2022 WL 891620, at *4–5 (D. Minn. Mar. 25, 2022) ("Beers has not identified, and the Court's research has not found, any applicable legal authority suggesting that the procedures Experian used here for reporting Chapter 7 bankruptcies *willfully* violate the FCRA.") (italics in original); *Peterson v. Experian Info. Sols., Inc.*, No. 20-cv-00606-DSD-ECW, 2021 WL 3116073, at *4 (D. Minn. July 21, 2021) ("Experian's reliance on the procedures approved in *White* establishes that Experian's reporting was not willful or reckless."); *Lockett v. Experian Info. Sols., Inc.*, No. 1:20-cv-1427-ELR-JCF, 2021 WL 4815896, at *5 (N.D. Ga. Jan. 4, 2021) (Report and Recommendation withdrawn upon filing of



AO 72A
(Rev.8/82)

amended complaint).

Plaintiff has not provided any evidence suggesting that Experian's procedures as they existed at the time Plaintiff filed his lawsuit were a reckless or knowing violation of the law. I agree with Judge Story and Experian that its reliance on the *White* Order "effectively forecloses that claim, as it relied on an interpretation of Section 1681e(b) that a federal court approved." *Benjamin*, 561 F. Supp. 3d at 1361.

Based on the cited authority and for the reasons stated, I conclude that Experian's motion for summary judgment as to Plaintiff's claim for willful violation of Section 1681e(b) of the FCRA should be granted.

## IV. CONCLUSION

For the reasons discussed above, I **RECOMMEND** that Experian's motion for summary judgment [Doc. 96] be **GRANTED**.

**IT IS SO RECOMMENDED**, this 9th day of November, 2022.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE